IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| MARIANO V. HERNANDO, | ) | CV. NO. 07-00620 DAE BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PATRICIA HAMAMOTO, | ) | |
| KATHLEEN WATANABE, MARIE | ) | |
| LADERTA, CINDY INOUYE, | ) | |
| GERALD OKOMOTO, FEY IKEI, | ) | |
| SUSAN KITSU, MARIE | ) | |
| BURGHART, EILEEN KUPIHEA, | ) | |
| CAROLYN LOVELYN, IRIS | ) | |
| HENDERSON, KATHLEEN | ) | |
| O'MALLEY, PAULA WONG, | ) | |
| ERIC SHIMABUKURO, each | ) | |
| person being sued in her/is individual | ) | |
| capacity, JOHN DOE 1-50; JANE | ) | |
| DOE 1-50; DEPARTMENT OF | ) | |
| EDUCATION and DEPARTMENT | ) | |
| OF HUMAN RESOURCES | ) | |
| DEVELOPMENT, for equitable | ) | |
| relief only, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS DEPARTMENT OF EDUCATION,
DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT, CINDY
INOUYE, PAULA WONG, IRIS HENDERSON, PATRICIA HAMAMOTO,
KATHLEEN O'MALLEY, AND SUSAN KITSU'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND
EQUITABLE RELIEF AND MONEY DAMAGES IN LIEU OF AN ANSWER,
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 12(b);
AND ORDER GRANTING DEFENDANTS KATHLEEN WATANABE, MARIE
LADERTA, AILEEN KUPIHEA, ALAN SHIMABUKURO AND MARIE
BURGHARDT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGMENT AND EQUITABLE RELIEF AND MONEY
DAMAGES IN LIEU OF AN ANSWER, PURSUANT TO FEDERAL RULES
OF CIVIL PROCEDURE, RULE 12(b)

On April 21, 2008, the Court heard Defendants' Motions to Dismiss.

M. Cora Avinante, Esq., appeared at the hearing on behalf of Plaintiff; Julie A.

Passa, Deputy Attorney General, appeared at the hearing on behalf of Defendants.

After reviewing the motion and the supporting and opposing memoranda, the Court

GRANTS Defendants' Motions.

BACKGROUND

From November 2001 to June 2003, Plaintiff was employed as a

Behavioral Health Specialist ("BHS") in the Central District of the Department of

Education ("DOE") of the State of Hawai`i.  During this time, Plaintiff's BHS

position was exempt from the State's civil service system.  The position was

converted to civil service in 2003, which resulted in Plaintiff being terminated.

2

On January 27, 2004, Plaintiff[1] applied for a BHS position for the Leeward District of DOE but was not hired.  Plaintiff alleges that he was "invited" to apply for his "old" position by the clinical director, who was, presumably, his previous boss.  (Complaint ¶¶ 3-4.)  On October 26, 2004, September 2, 2005, December 27, 2005, and March 15, 2006, Plaintiff again interviewed for a BHS position with DOE but was not hired.

In April 2006, Defendant Henderson inquired as to whether Plaintiff wanted to interview again for a BHS position.  Shortly thereafter, Henderson informed Plaintiff that he would not be interviewed because Plaintiff had been interviewed within the previous six months.  This determination was apparently made pursuant to an internal policy of DOE and/or the Department of Human Resources Development ("DHRD").  Plaintiff requested documentation of this policy but Henderson did not provide it.  At some point thereafter, Plaintiff complained in writing to Defendant Hamamoto and requested her assistance.  It is not clear if Hamamoto responded.

On December 26, 2007, Plaintiff filed his Complaint for Declaratory Judgment and Equitable Relief and Money Damages (Doc. # 1).  On February 6, 2008, Defendants DOE, DHRD, Cindy Inouye, Paula Wong, Iris Henderson,

---

[1] The Court notes that Plaintiff is an attorney licensed to practice in Hawai`i.

3

Patricia Hamamoto, Kathleen O'Malley, and Susan Kitsu (collectively, "DOE Defendants") filed a Motion to Dismiss Plaintiff's Complaint ("First Motion to Dismiss") in lieu of an answer.  Plaintiff filed an opposition to the First Motion to Dismiss on February 26, 2008.  On March 17, 2008, Defendants Kathleen Watanabe, Marie Laderta, Aileen Kupihea, Alan Shimabukuro, and Marie Burghardt (collectively, "Watanabe Defendants")[2] filed a Motion to Dismiss Plaintiff's Complaint ("Second Motion to Dismiss") (collectively, "Motions to Dismiss") in lieu of an answer.  On April 9, 2008, DOE Defendants and Watanabe Defendants jointly filed a reply to Plaintiff's opposition.  Plaintiff did not oppose the Second Motion to Dismiss.

## STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Review is limited to the contents of the complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994).  Allegations of fact in the complaint must be taken as true and construed in

---

[2] The Court will refer to DOE Defendants and Watanabe Defendants, collectively, as "Defendants."  The Court notes that Defendants filed two separate motions to dismiss because Watanabe Defendants signed Plaintiff's Fed. R. Civ. P. Rule 4 request for waiver of service, permitting them 60 days to respond to the Complaint.  (See Second Motion to Dismiss at 1.)

the light most favorable to the plaintiff.  <u>See</u> <u>Livid Holdings Ltd. v. Salomon Smith</u>

<u>Barney, Inc.</u>, 416 F.3d 940, 946 (9th Cir. 2005).  A complaint need not include

detailed facts to survive a Rule 12(b)(6) motion to dismiss.  <u>See</u> <u>Bell Atl. Corp. v.</u>

<u>Twombly</u>, 127 S. Ct. 1955, 1965 (2007).   In providing grounds for relief,

however, a plaintiff must do more than recite the formulaic elements of a cause of

action.  <u>See</u> <u>id.</u> at 1966.  A plaintiff must include enough facts to raise a reasonable

expectation that discovery will reveal evidence.  In other words, a plaintiff must

allege enough facts to state a claim for relief that is plausible on its face.  <u>See</u> <u>id.</u> at

1974.  "[C]onclusory allegations without more are insufficient to defeat a motion

to dismiss for failure to state a claim."  <u>McGlinchy v. Shell Chem. Co.</u>, 845 F.2d

802, 810 (9th Cir. 1988).

<u>DISCUSSION</u>

While unclear, it appears that Plaintiff seeks: (1) declaratory relief to

determine the constitutional validity of two DOE policies and procedures,

specifically Policy No. 301.001 (entitled Certification of Eligibles for Civil Service

Positions) and Policy No. 300.001 (entitled Types of Appointments), as these

policies are applied to the civil service selection process by DOE;[3] (2) injunctive

_____

[3] Plaintiff dedicates one sentence to this argument in paragraph 1 of the
Complaint but provides no support for it.  As such, the Court does not consider
(continued...)

relief in the form of appointment to a BHS position with DOE;[4] and (3) money

damages resulting from the alleged constitutional harm inflicted upon Plaintiff.  In

support of these general allegations, Plaintiff apparently contends that Defendants

violated: (1) 42 U.S.C. § 1983; (2) 42 U.S.C. § 1985; (3) the Hawai`i Constitution;

(4) the United States Constitution; (5) the Organic Act; (6) Chapter 91 of the

Hawai`i Revised Statutes ("HRS"); (7) HRS § 480-2; (8) HRS § 78-1; (9) HRS §

378-2; and (10) HRS § 1-2.

DOE Defendants argue the following in support of the First Motion to

Dismiss: (1) 11th Amendment sovereign immunity bars all claims against DOE

and DHRD as State agencies; (2) Plaintiff's claims against DOE and DHRD for

equitable relief based on federal constitutional law or statutes are barred; (3)

Plaintiff's claims for injunctive relief are defective and the State has not waived its

immunity; (4) the Court lacks subject matter jurisdiction over claims against DOE

and DHRD; (5) DOE and DHRD have not been properly served and, as such,

---

[3](...continued)
Plaintiff's request for declaratory relief for purposes of the instant Motions to
Dismiss.

[4] In his opposition, Plaintiff states that he seeks prospective, as opposed to
equitable, relief.  The Court is unclear as to what Plaintiff claims is the difference
between these two forms of relief.  In addition, an opposition to a motion to
dismiss is not the appropriate forum for amending a complaint.

Plaintiff's Complaint should be dismissed;[5] (6) Plaintiff's constitutional rights were not violated; (7) Plaintiff has not alleged the requisite personal participation for § 1983 liability; (8) Plaintiff has failed to state a cognizable § 1985 claim; (9) Plaintiff has not properly served Defendants Hamamoto, O'Malley, and Kitsu; (10) Plaintiff makes no plausible challenge to the Policies; and (11) the applicable statute of limitations bars Plaintiff's claims arising out of incidents alleged to have occurred before December 26, 2006.   Watanabe Defendants' Second Motion to Dismiss sets forth identical arguments to DOE Defendants' sixth, seventh, eighth, and eleventh arguments described above.

I.  Statute of Limitations

Before turning to the substantive merits of Plaintiff's § 1983 claims, the Court first addresses Defendants' contention that most of the incidents that form the basis for Plaintiff's Complaint occurred outside the requisite statute of limitations period.  The Court agrees with Defendants.

"Because § 1983 does not contain a statute of limitations, federal courts apply the forum state's statute of limitations for personal injury claims."

---

[5] At the hearing, Defendants stated that service had still not been effectuated on the Department of the Attorney General, DOE, or DHRD.  Because the Court finds dismissal of Plaintiff's claims appropriate on alternative grounds, the Court does not address the service of process issue.

Johnson v. California, 207 F.3d 650, 653 (9th Cir. 2000).   Hawaii's personal

injury statute provides that, "[a]ctions for the recovery of compensation for damage

or injury to persons or property shall be instituted within two years after the cause

of action accrued, and not after, except as provided in section 657-13."   HRS

§ 657-7.   Civil rights claims brought pursuant to 42 U.S.C. § 1983 are therefore

subject to the two-year statute of limitations.   Pele Defense Fund v. Paty, 837 P.2d

1247, 1259 (Haw. 1992) ("the two-year statute of limitations set forth in HRS §

657-7 governs § 1983 actions, rather than the six-year statute of limitations set

forth in HRS § 657-1(4)."); see also Action Apartment Ass'n, Inc. v. Santa Monica

Rent Control Bd., 509 F.3d 1020, 1026 (9th Cir. 2007) ("It is well-established that

claims brought under § 1983 borrow the forum state's statute of limitations for

personal injury claims").   For purposes of claims brought under

§ 1983, this Court must look to federal law to see "when a claim accrues" to

determine when the statute of limitations period begins to run.   Johnson, 207 F.3d

at 653.   Under federal law, a claim accrues when the plaintiff knows or should have

known of the injury.   See, e.g., Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir.

2001); RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1058 (9th Cir. 2002).

Accordingly, claims against Defendants here began to accrue when Plaintiff knew

or should have known of the alleged injury.

8

Here, all of the events of which Plaintiff complains, with the

exception of the interviews that occurred on December 27, 2005 and March 15,

2006, took place more than two years prior to the filing of Plaintiff's Complaint on

December 27, 2007.  These acts therefore fell outside the statute of limitations set

forth in HRS § 657-7.  There is no indication in the Complaint that Plaintiff was

unaware of the alleged injury.  In fact, Plaintiff's training as an attorney should

have alerted him to any perceived constitutional injury at the time that it occurred

or shortly afterward for purposes of a § 1983 claim.  The Court thus finds that the

statute of limitations bars all of Plaintiff's claims premised upon interviews or

other events that occurred before December 27, 2005.

II.  Substantive Merits of Plaintiff's Section 1983 Claims

While again unclear, it appears that Plaintiff claims that Defendants'

actions constituted a violation of his due process, equal protection, and First

Amendment rights.  With regard to Counts I through IX,[6] it appears that Plaintiff

alleges that, by failing to select Plaintiff for a BHS position on numerous occasions

and for failing to inform Plaintiff of his right to appeal these decisions, Defendants

deprived Plaintiff of a constitutional property interest by withholding his right to

---

[6] Plaintiff titles Counts I through IX as "State Claims," but appears to
premise these claims on a deprivation of a constitutional interest.  The Court
therefore construes these claims as invoking § 1983.

an appeal.  Furthermore, in Count XXIII,[7] Plaintiff generally alleges that
Defendants violated the "1st, 5th, and 14th amendments' Due Process and Equal
Protection Clauses."  (Complaint ¶ 40.)  It appears that Plaintiff contends that
Defendants Watanabe, Laderta, and Inouye knew or should have known that the
policies that Plaintiff claims are unconstitutional "did not carry with them a
presumption of constitutionality or validity."  (Id.)  In Count XXIV, Plaintiff
alleges that Defendants violated his First, Fifth, and Fourteenth Amendment rights
by retaliating against him by not inviting Plaintiff to interview after he had
complained to Hamamoto.  Finally, in Count XXV, Plaintiff asserts that
Defendants violated his "federal constitutional, statutory rights, privileges and
immunities found in 42 U.S.C. 1983 and 1985(b)(c)."[8]  (Id. at 41.)

> 42 U.S.C. § 1983 states:
>
> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any

---

[7] Counts X through XXII assert various violations of State law and the Hawaii constitution.

[8] Plaintiff's citation to § 1985 is incorrect.  There is no subsection (b)(c) or, for that matter, individual subsections labeled (b) or (c).  Plaintiff appears to allege a conspiracy to violate his civil rights pursuant to § 1985(3) and the Court construes his allegation as such.

> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought
> against a judicial officer for an act or omission taken in
> such officer's judicial capacity, injunctive relief shall not
> be granted unless a declaratory decree was violated or
> declaratory relief was unavailable. For the purposes of
> this section, any Act of Congress applicable exclusively
> to the District of Columbia shall be considered to be a
> statute of the District of Columbia.

Contrary to Plaintiff's assertion in Count XXV, § 1983 does not create specific

rights under federal law.  See Blanchard v. Morton School Dist., 509 F.3d 934, 936

(9th Cir. 2007).  Rather, the statute establishes a cause of action for alleged

violation of constitutional or statutory rights.

"To establish that a state official is personally liable in an action under

42 U.S.C. § 1983, a plaintiff must show that 'the official, acting under color of

state law, caused the deprivation of a federal right.'"  Spoklie v. Montana, 411 F.3d

1051, 1060 (9th Cir. 2005) (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)).  As

long as the official's "conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known," he or she

has qualified immunity from civil liability under § 1983.  Spoklie, 411 F.3d at

1060.  In analyzing the qualified immunity defense, the court must determine: "(1)

what right has been violated; (2) whether that right was so 'clearly established' at

the time of the incident that a reasonable officer would have been aware of its constitutionality; and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful." Jensen v. City of Oxnard, 145 F.3d 1078, 1085 (9th Cir. 1998), cert. denied, 525 U.S. 1016 (1998).

Turning to the first inquiry, the Court must determine what federal rights, if any, were violated here.  As stated earlier, Plaintiff's Complaint alleges a deprivation of rights and privileges secured by the Constitution and other sources, which is the statutory language for a § 1983 claim.  As will be discussed in more detail below, the Court finds that Plaintiff fails to state a claim upon which relief can be granted because, even if his allegations are taken as true, there has been no violation of Plaintiff's constitutional rights.

A.  Due Process Rights

Plaintiff apparently contends that he was deprived of a constitutional property interest[9] when he was allegedly barred from participating in the Internal Complaint Process ("ICP") established by Policy No. 300.003, entitled Competitive Recruitment for Civil Service Positions, Applicant and Eligible

---

[9] Plaintiff additionally alleges in Count I that the failure to advise him of the ICP process violated his "state-created, procedural rights imbedded in Chapter 76" of the HRS.  (Complaint ¶ 18.)  As the instant discussion is focused on the federal rights alleged by Plaintiff for purposes of his § 1983 claim, the Court does not address this State law issue here.

Complaint Rights.  This Policy appears to provide an internal complaint mechanism for applicants who are not selected for State civil service positions.[10] Essentially, Plaintiff avers that DOE and its employees failed to publish Policy No. 300.003, in violation of State law and in abrogation of Plaintiff's constitutional property interests.   Plaintiff alleges that "[w]ithholding the critical appeals rights is the equivalent of extinguishing Plaintiff's constitutional property interest by barring access to the ICP process which is a condition precedent for eligibility or jurisdiction of Merit Appeals Board proceedings."  (Complaint ¶ 18.)[11]  While it is again unclear as to the exact nature of Plaintiff's argument, he apparently appeals to the Due Process Clause of the U.S. Constitution.

The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process.  <u>Portman v. County of Santa Clara</u>, 995 F.2d 898, 904 (9th Cir. 1993).  A § 1983 claim based upon procedural due process[12] thus has three elements: (1) a liberty or property

---

[10] Candidates who are unsatisfied with the ICP process may, in turn, file an appeal with the Merit Appeals Board.

[11] Plaintiff incorporates Paragraph 18 of his Complaint in Counts II through IX.  The discussion as to the viability of Plaintiff's § 1983 claims therefore extends to these counts as well.

[12] The Due Process Clause is comprised of procedural due process rights and substantive due process rights.  To establish a substantive due process claim, a

(continued...)

13

interest protected by the Constitution; (2) a deprivation of the interest by the

government; (3) lack of process.  Id.  The Due Process Clause does not create

substantive rights in property; the property rights are defined by reference to state

law.  Id.  Plaintiff does not appear to allege a deprivation of a liberty interest here.

Thus, the Court directs its analysis at whether Plaintiff has alleged the deprivation

of a constitutionally protected property interest.  Again, while unclear, it appears

Plaintiff alleges that he has a cognizable property interest subject to constitutional

protection in: (1) an interview for employment;[13] (2) notice of appeals processes as

part of the hiring process for State civil service positions pursuant to Policy No.

300.003; and (3) employment with DOE.  For the reasons set forth below, Plaintiff

does not have a constitutionally-protected property interest in any of these.

---

[12](...continued)
plaintiff must establish as a threshold matter a government deprivation of life,
liberty, or property.  Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir.
1998). The protections of substantive due process, however, have for the most part
been accorded to matters relating to marriage, family, procreation, and the right to
bodily integrity.  Id. n. 4 (internal quotation and citation omitted).  "These fields
likely represent the outer bounds of substantive due process protection."  Id.
Accordingly, the Court focuses its immediate inquiry only on Plaintiff's allegation
of a deprivation of procedural due process.

[13] Presumably, Plaintiff argues that he was entitled to an interview in April
2006 after he was contacted by Henderson.  To the Court's knowledge, this is the
only instance where Plaintiff was not interviewed after he had applied for a BHS
position.

To have a property interest in a benefit, a person must have more than an abstract need, desire, or unilateral expectation for it.  <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972).  The person must, instead, have a "legitimate claim of entitlement to it."  <u>Id.</u>  Property interests are not created by the Constitution but, rather, are created and defined by "existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  <u>Id.</u>  In the context of employment, a government employee has a constitutionally protected property interest in continued employment when the employee has a legitimate claim of entitlement to the position.  <u>Portman</u>, 995 F.2d at 904 (internal citation omitted).  If, under state law, employment is at-will, then there is no property interest in the job.  <u>Id.</u>  In fact, an individual does not even have a constitutionally protected right in a promotion.  <u>Nunez</u>, 147 F.3d at 871-72.

With regard to Plaintiff's allegation that he was deprived of his constitutionally due process rights by DOE's failure to grant him an additional interview, the Court can locate no legal authority supporting this proposition.  Moreover, Plaintiff interviewed for a BHS position on five occasions prior to April 2006, when he was denied an interview.  In fact, Plaintiff was interviewed on March 15, 2005, mere weeks before the decision not to interview him again

apparently occurred.  As such, Plaintiff was not deprived of an interview; he was merely not afforded an opportunity for a sixth interview.  Accordingly, even if Plaintiff could somehow demonstrate that there was a constitutionally protected interest in an interview, Plaintiff cannot demonstrate that he was deprived therefrom.

Plaintiff's claim that DOE's failure to alert him to his rights of appeal caused a deprivation of his due process rights is also unavailing.  First, the Court cannot locate any authority suggesting that there is a constitutionally protected property interest in personally receiving published notice of the internal complaint process of an employer from whom one seeks employment.  Second, as Policy No. 300.003 itself describes, there existed a forum for appeal through the ICP process and Merit Appeals Board and, as such, Plaintiff was not deprived of any due process right.  Plaintiff does not allege that process was unavailable, merely that he was not personally made aware of it.  While this failure to inform Plaintiff of his ability to appeal the decisions not to hire him might speak to an inadequate system on the part of DOE, it does not rise to the level of a constitutional violation. Plaintiff, a licensed attorney, could have easily discovered the appeal policy had he chosen to inquire about it.  Third, as to Plaintiff's claim that DOE was required to

16

print and publish the relevant policies pursuant to HRS § 1-2,[14] Plaintiff's interpretation of this statute is incorrect.  HRS § 1-2 states in relevant part: "No written law, unless otherwise specifically provided by legislative enactment . . . shall be obligatory without first being printed and made public."  HRS § 1-2 therefore does not require the printing and publishing of laws as Plaintiff contends but, rather, requires printing and publishing of certain laws in order to make them obligatory.  Notwithstanding the fact that Policy No. 300.003 is not a law but, instead, is an internal departmental policy, Plaintiff's reading of HRS § 1-2 to impose a requirement on DOE to publish the policy is not supported by the plain language of the statute.[15]  Plaintiff had no protected property interest in being notified of DOE's internal appeals process.

Finally, Plaintiff apparently seeks injunctive relief in the form of appointment to a BHS position.  (Complaint ¶ 1.)  As stated previously, Plaintiff has no protected property interest in a job for which he is merely applying.  See Portman, 995 F.2d at 904.  Plaintiff does not allege that he had a protected property

_____

[14] While technically outside the bounds of its discussion on protected property interests, the Court addresses Plaintiff's interpretation of HRS ¶ 1-2 because it is intertwined with his due process argument.

[15] Moreover, at the hearing, it became clear that the policies were available to job applicants who asked for them.

interest in maintaining his original employment status and, as a result, the Court does not address that issue here.[16]  The Court finds, however, that Plaintiff does not have a protected property interest in employment with DOE as set forth in his Complaint.

Based on the foregoing discussion, to the extent Plaintiff's § 1983 claims are premised upon alleged violations of the Due Process Clause, Defendants' Motions to Dismiss are hereby GRANTED and Plaintiff's claims are dismissed.

B.  Equal Protection

Plaintiff also apparently claims that he was denied equal protection by: (1) not being hired for a BHS position; (2) DOE's failure to print Policy No. 300.003; and (3) Defendants' retaliation against him in not inviting him to interview after he had complained to Hamamoto.

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  Barren v. Harrington, 152 F.3d

---

[16] The Court also notes that this argument would apparently suffer from a statute of limitations problem had Plaintiff raised it as his employment with DOE concluded in June 2003.

1193, 1194 (9th Cir. 1998) (citations omitted); see also  Benigni v. City of Hemet,

879 F.2d 473, 477 (9th Cir. 1988) (citing Wayte v. United States, 470 U.S. 598,

608 (1985)).

Here, Plaintiff has not alleged that he is a member of a protected class.

Even if he was, Plaintiff has not alleged that the actions taken by DOE, DHRD, or

the individually named Defendants were done with discriminatory intent or were

otherwise based on an unlawful standard or protected category.  There are no

allegations in the Complaint that Defendants took the alleged actions based on an

improper motive.  Accordingly, to the extent Plaintiff's § 1983 claims are based

upon the Equal Protection Clause, Defendants' Motions to Dismiss are GRANTED

and Plaintiff's claims are dismissed.

C.  First Amendment

Plaintiff lists the First Amendment as a basis for the constitutional

violations referenced in the Complaint but does not articulate the manner in which

his First Amendment rights have allegedly been violated.  Based on the Court's

careful review of the Complaint and moving papers, it appears the only First

Amendment arguments Plaintiff could conceivably be raising are: (1) a retaliation

claim premised upon Plaintiff's contention that he was not invited to interview

19

again after he had complained to Hamamoto, and (2) a claim that Plaintiff was deprived of his right to ask questions as to his non-selection for the BHS position.[17]

In order to state a First Amendment retaliation claim, a government employee must show (1) that he or she engaged in protected speech; (2) that the employer took adverse employment action; and (3) that his or her speech was a substantial or motivating factor for the adverse employment action. Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003). As has been established, Plaintiff was not an employee of DOE when he complained to Hamamoto and, thus, Plaintiff cannot assert a First Amendment retaliation claim. Moreover, the subsequent failure to invite Plaintiff to interview cannot be construed as an adverse employment action when Plaintiff was not employed at the time. Finally, the Court can locate no authority supporting the proposition that there is a requirement to interview a job applicant pursuant to the First Amendment.

As to Plaintiff's vague allegation that he was deprived of his right to ask questions as to his non-selection, there is nothing in the record to suggest that Defendants in any way stifled Plaintiff's ability to inquire in such a way. Plaintiff presents no law to support his argument and it is unclear to the Court how

---

[17] To the extent that Plaintiff's First Amendment claims are based on other grounds, the Court finds Plaintiff's claims incomprehensible. As such, Plaintiff has failed to state a claim upon which relief could be granted for any such claims.

Plaintiff's allegation implicates the First Amendment.  Furthermore, Plaintiff co-mingles his constitutional claims in such a way as to render them indiscernible.  For example, Plaintiff apparently premises the instant allegation of a deprivation of a right to ask questions on his "constitutional right of confrontation and cross-examination."  (Pls.' Mot. in Opp'n at 10.)  As is well established, these rights are protected by the Sixth, not the First, Amendment.  As such, Plaintiff has not stated a First Amendment claim upon which relief may be granted.

To the extent Plaintiff's § 1983 claim is based on the First Amendment, Defendants' Motions to Dismiss is GRANTED and Plaintiff's claims are dismissed.

III. Section 1985 Claims

As stated in footnote seven above, Plaintiff apparently alleges a conspiracy between Defendants to deprive him of his constitutional rights pursuant to 42 U.S.C. § 1985(3).  For the reasons discussed in Section II, the Court has determined that there was no deprivation of constitutional rights here.  As such, Plaintiff's § 1985 claim fails as a matter of law.  Defendants' Motions to Dismiss are therefore GRANTED and Plaintiff's § 1985 claims dismissed.

IV. <u>State Claims</u>

Plaintiff invokes this Court's supplemental jurisdiction for his State law claims pursuant to 28 U.S.C. § 1367(a).  (Complaint ¶ 42.)[18]  Section 1367(a) states in relevant part:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

In <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715 (1966), the Supreme Court stated that a federal court has jurisdiction over an entire action, including state law claims, whenever the federal law claims and state law claims in the case derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding. <u>Id.</u> at 725.  A district court may decline to exercise supplemental jurisdiction, however, if the court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  Section 1367(c)(3) derives from <u>Gibbs's</u> admonition that "[n]eedless decisions of state law should be avoided."  383 U.S. at

---

[18] The Complaint contains two paragraphs numbered 41.  The Court refers to the second of these two as paragraph 42.

22

726; <u>Executive Software N. Am., Inc. v. United States Dist. Court</u>, 24 F.3d 1545, 1556 (9th Cir. 1994) ("Subsection [sic] (c)(2) . . . and (c)(3) . . . are derived directly from <u>Gibbs</u> itself[.]").  <u>Gibbs</u> recognized that a complaint making an "unfounded claim of federal right" might nonetheless provide a federal court the opportunity to determine an issue of state law.  <u>See</u> <u>Strachman v. Palmer</u>, 177 F.2d 427, 433 (1st Cir. 1949) (Magruder, C.J., concurring), cited in <u>Gibbs</u>, 383 U.S. at 726 n. 15. Section 1367(c)(3) reflects this concern by expressly enabling federal courts to avoid determining an issue of state law when the federal claim, on which its jurisdiction rests, proves to be unfounded.

The Court finds that declining supplemental jurisdiction is appropriate here.  For the reasons discussed above, Plaintiff's federal claims are without merit. As this law suit is still in its nascent stage, it would be inappropriate for this Court to needlessly determine issues of State law.  Thus, this Court GRANTS Defendants' Motions to Dismiss and dismisses WITHOUT PREJUDICE Plaintiff's State law claims.

CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motions to Dismiss.  Having determined that dismissal of Plaintiff's federal claims

was warranted on multiple grounds, the Court declines to address the additional

arguments in favor of dismissal raised by Defendants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 29, 2008.

_____
David Alan Ezra
United States District Judge


Hernando v. Hamamoto et al., CV No. 07-00620 DAE-BMK; ORDER
GRANTING DEFENDANTS DEPARTMENT OF EDUCATION,
DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT, CINDY
INOUYE, PAULA WONG, IRIS HENDERSON, PATRICIA HAMAMOTO,
KATHLEEN O'MALLEY, AND SUSAN KITSU'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND
EQUITABLE RELIEF AND MONEY DAMAGES IN LIEU OF AN ANSWER,
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 12(b);
AND ORDER GRANTING DEFENDANTS KATHLEEN WATANABE, MARIE
LADERTA, AILEEN KUPIHEA, ALAN SHIMABUKURO AND MARIE
BURGHARDT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGMENT AND EQUITABLE RELIEF AND MONEY
DAMAGES IN LIEU OF AN ANSWER, PURSUANT TO FEDERAL RULES
OF CIVIL PROCEDURE, RULE 12(b)